Lee DILLWORTH, Plaintiff,

v.

Eric CLARK, Mississippi Secretary of State; Mike Moore, Mississippi Attorney General; Barbara Dunn, Hinds County Circuit Clerk; Marilyn M. Avery, Hinds County Election Commission—District 1; Ruth Shirley, Hinds County Election Commission—District 3; Lelia Rhodes, Hinds County Election Commission—District 5, Defendants.

No. CIV.A. 3:99–CV–713WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 15, 2000.

· Lee Dillworth, Jackson, MS, pro se.

## *ORDER OF DISMISSAL*

WINGATE, District Judge.

Before the court are two motions of the defendants [**items # 4 & 5**] to dismiss the above-styled and numbered cause pursuant to Rule 12(b)(6)[1] of the Federal Rules of Civil Procedure for mootness and for failure to state a claim for which relief may be granted. Plaintiff, who opposes the. motion, filed this lawsuit against defendants, invoking the protections afforded by Voting Rights Act of 1965, § 2(a), as amended, Title 42 U.S.C.A. § 1973(a)[2] and the Fourteenth[3] and Fifteenth[4] Amendments to the United States Constitution, complaining of plaintiff's frustrated at-

---

**1.** Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:

  (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

  (6) failure to state a claim upon which relief can be granted, . . .

**2.** Title 42 U.S.C. § 1973(a) provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section."

**3.** The Fourteenth Amendment to the United States Constitution provides in pertinent part that: "[N]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws . . . ."

**4.** The Fifteenth Amendment, Section 1, provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on ac-

tempt to capture the office of Mississippi State Senator for the 27th District of Mississippi as a Reform Party candidate. Plaintiff's name never made it to the ballot, since the Hinds County, Mississippi, Election Commission voted to exclude plaintiff's candidacy because that candidacy had not been certified by a Hinds County Reform Party Executive Committee, an impossible undertaking since that Committee was not in existence at the critical moment. Convinced that Mississippi state law mandates the existence of this entity and its subsequent certification of any candidate who would aspire to the elected office in issue, defendants now ask this court to dismiss this lawsuit on those grounds. Defendants also argue that this dispute is now moot, since the election has now been held. Persuaded by defendants' former argument on the matter of committee certification, this court grants defendants' motion to dismiss this lawsuit.

count of race, color, or previous condition of servitude."

5. Mississippi Code Annotated Section 23–15–213 provides for establishing a County Election Commission as follows:

At the general election in 1984 and every four (4) years thereafter there shall be elected five (5) commissioners of election for each county whose terms of office shall commence on the first Monday of January following their election and who shall serve for a term of four (4) years. Each of the commissioners, before acting, shall take and subscribe the oath of office prescribed by the Constitution and file the same in the office of the clerk of the chancery court, there to remain. While engaged in their duties, the commissioners shall be conservators of the peace in the county, with all the duties and powers of such.

The qualified electors of each supervisor's district shall elect, at the general election in 1984 and every four (4) years thereafter, in their district one (1) commissioner of election. No more than one (1) commissioner shall be a resident of and reside in each supervisor's district of the county; it being the purpose of this section that the county board of election commissioners shall consist of one (1) person from each supervisor's district of the county and that each such commissioner be elected from the supervisor's district in which he resides. Candidates for county election commission-

## BACKGROUND

The plaintiff, who is African–American, was the purported Reform Party candidate for Senator from the 27th District of Mississippi which is situated wholly within the confines of Hinds County, Mississippi, and is comprised of Precincts 40, 11, 12, 13, 15, 16, 21, 22, 23, 27, 28, 29, 30, 31, 54, 55, 56, 57, 60, 61, 62, 5, 6, 8, 10 and 18. *See* Mississippi Code Annotated § 5–3–1. On September 16, 1999, the Hinds County Election Commission[5] voted unanimously to exclude the plaintiff from the ballot in Hinds County, Mississippi's November 2, 1999, general election, stating that no Hinds County Reform Party Executive Committee was in existence to certify that the plaintiff indeed was the Reform Party candidate as required by Mississippi Law. In arriving at their decision to exclude the plaintiff, the Commissioners relied on an Opinion[6] of the Mississippi Attorney Gen-

er shall qualify by filing with the clerk of the board of supervisors of their respective counties a petition personally signed by not less than fifty (50) qualified electors of the supervisor's district in which they reside, requesting that they be a candidate, not less than sixty (60) days before the election and unless such petition is filed within said time, their names shall not be placed upon the ballot. All candidates shall declare in writing their party affiliation, if any, to the board of supervisors, and such party affiliation shall be shown on the official ballot. Mississippi Code Annotated Section 23–15–263(1) provides in pertinent part that "the county executive committee at primary elections shall perform all duties that relate to the qualification of candidates for primary elections, print ballots for primary elections, appoint the primary election officers, resolve contests in regard to primary elections, and perform all other duties required by law . . . ."

6. Mississippi Code Annotated § 7–5–25 provides that "[t]he Attorney General shall give his opinion in writing, without fee, to the Legislature, or either house or any committee thereof, and to the Governor, the Secretary of State, the Auditor of Public Accounts, the State Treasurer, the Superintendent of Public Education, the Insurance Commissioner, the Commissioner of Agriculture and Commerce, the State Geologist, the State Librarian, the Director of Archives and History, the Adjutant

eral's Office which stated that candidates running for office in districts wholly contained in one county must be certified by the county executive committee of that candidate's party. As previously noted, the 27th District of Mississippi is situated wholly within the confines of Hinds County, Mississippi. Thus, the Commissioners excluded the plaintiff because he was not properly certified, satisfied that their decision was required by law. Consequently, the incumbent Senator of the Democratic Party, Hillman Frazier,[7] who also is African–American, ran unopposed in the general election.

Plaintiff, acting *pro se* filed the instant lawsuit on October 12, 1999, seeking to be restored to the ballot in Hinds County as the Reform Party candidate for the Senator from District 27. Alternatively, the plaintiff asked the court to remove all candidates in Mississippi's elections who had not complied with Mississippi law by having their respective candidacies certified by an executive committee of their respective parties. Plaintiff complained that other counties in Mississippi had not followed the letter of the law as had Hinds County.

The defendants responded to the plaintiff's complaint with the instant motion to dismiss, contending, first, that the plaintiff's claims are moot because the election is over and the relief sought in the complaint cannot now be granted. Otherwise, relying on the Committee certification requirement, the defendants contend that the complaint fails to assert a claim for which relief can be granted.

In his response to defendants' motions, plaintiff confesses his juridical diffidence, stating that he is no lawyer and that he must rely upon the court to assist him with employing the proper legal language to state his claim. Although bereft of legal training, plaintiff advances assertions to show that he is no novice in the struggle for dignity and civil rights. Thus, he proudly proclaims that he has spent half his life fighting for the fundamental right of all citizens to be able to vote and participate in the political process, while referring to Section 2 of the Voting Rights Act of 1965, as well as the Fourteenth and Fifteenth Amendments of the United States Constitution.

Plaintiff agrees that his opportunity to get on the Hinds County ballot now has passed. Nevertheless, plaintiff asks this court to order a new election and to direct the defendants to compensate him for the approximately $1,000.00 he spent for six months of campaigning.

General, the State Board of Health, the Commissioner of Corrections, the Public Service Commission, Chairman of the State Tax Commission, the State Forestry Commission, the Transportation Commission, and any other state officer, department or commission operating under the law, or which may be hereafter created; the trustees and heads of any state institution, the trustees and heads of the universities and the state colleges, the district attorneys, the boards of supervisors of the several counties, the sheriffs, the chancery clerks, the circuit clerks, the superintendents of education, the tax assessors, county surveyors, the county attorneys, the attorneys for the boards of supervisors, mayor or council or board of aldermen of any municipality of this state, and all other county officers (and no others), when requested in writing, upon any question of law relating to their respective offices."

This statute authorizes the Mississippi Attorney General's Office to provide written opinions to state and local governments and officials. No liability attaches to any entity relying in good faith on such opinion "unless a court of competent jurisdiction, after a full hearing, shall judicially declare that such opinion is manifestly wrong and without any substantial support." Miss.Code Ann. § 7–5–25; *Zimmerman v. Three Rivers Planning and Development District*, 747 So.2d 853, 858 (Miss.App.1999). Attorney General's Opinions are styled as advisory when issued. *See State, By and Through Mississippi Ethics Com'n v. Aseme*, 583 So.2d 955, 956 (Miss. 1991) (addressing Advisory Opinion 87–36–E); *Gibson v. Board of Sup'rs of Calhoun County, Miss.*, 656 So.2d 312 (Miss.1995) (referring to the Attorney General's Opinion as advisory).

7. Hillman Frazier served in the Mississippi House of Representatives from 1980 to 1993. Frazier came to his present State Senate post in 1993 and is in his third term.

Plaintiff bottoms his request for a new election on the alleged unequal, unfair treatment he received. According to plaintiff, other candidates in Mississippi were being allowed on the ballots of their respective counties and districts even though these other party candidates had not been certified by a county election commissioner. The plaintiff does not contend, however, that any of these candidates ran for office in a district situated wholly within the confines of one Mississippi county.

This court has reviewed the applicable federal law, the Mississippi statutes and the Mississippi Attorney General's Opinion submitted at the request of the Hinds County Election Commission regarding the certification of the plaintiff's candidacy. Having reviewed these matters and the plaintiff's complaint carefully, this court is persuaded that the plaintiff's complaint fails to state a cognizable claim for relief, and finds that the motion of the defendants for dismissal of the plaintiff's complaint under Rule 12(b)(6) is well taken. Before proceeding to the issue of 12(b)(6) dismissal, the court shall address whether this action is moot.

### IS THE COMPLAINT MOOT?

■ Defendants contend that the plaintiff's case is moot. This court disagrees. The burden of demonstrating mootness is a heavy one. *Pederson v. Louisiana State University*, 213 F.3d 858, 874 (5th Cir.2000), citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). A controversy is mooted only when there are no longer adverse parties, or when the parties no longer have sufficient legal interests to maintain the litigation. *Goldin v. Bartholow*, 166 F.3d 710, 717–18 (5th Cir.1999),

citing *Chevron, U.S.A. v. Traillour Oil Company*, 987 F.2d 1138, 1153 (5th Cir. 1993). A moot case presents no Article III case or controversy,[8] and a court has no constitutional jurisdiction to resolve the issues it presents. *Id.* at 718, citing *Hogan v. Mississippi University for Women*, 646 F.2d 1116, 1117 n. 1 (5th Cir.1981). However, in the instant case, if the plaintiff's complaint states constitutional claims which are cognizable and susceptible of remedy, a case and controversy would be present.

■ The defendants contend that this case is moot because the relief sought by the plaintiff cannot now be granted. The defendants cite *Harris v. City of Houston*, 151 F.3d 186 (5th Cir.1998), *Arizonans For Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997), and other authorities for the principle that a federal court may not enjoin something that has already taken place. This court agrees. Moreover, even the plaintiff agrees that the time for getting on the ballot in Hinds County has passed, and he makes no argument that he followed the statutory requirements for being placed on the ballot. Nevertheless, the plaintiff is not seeking injunctive relief. He seeks to overturn the recent election, and he asks this court to order a new election based on his assertions of irregularity in the process. Regardless of whether this is a meritorious assertion, it is not a moot one. Certainly, if the election were shown by the plaintiff to be fraught with irregularity, then this court would be empowered to grant the appropriate relief under the Voting Rights Act. The case would not be made moot simply because the election was over.

8. Article III, Section 2, Clause 1, of the United States Constitution provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

Furthermore, a controversy becomes moot when the parties lack a legally cognizable interest in the outcome. *See Chevron, U.S.A. v. Traillour Oil Company,* 987 F.2d 1138, 1153 (5th Cir.1993). In order to have a cognizable legal interest in the outcome of a case, the appellants must demonstrate an injury traceable to the defendants that is susceptible to some judicial remedy. *Baccus v. Parrish,* 45 F.3d 958, 961 (5th Cir.1995), citing *Monsanto Company v. FERC,* 963 F.2d 827, 829 (5th Cir.1992). In the instant case the plaintiff claims voting rights and equal protection violations, and asks for a new election to be held in órder to overcome what he perceives to be a system which unjustly prevented his candidacy. Certainly, this is a cognizable legal interest.

■ Next, the defendants contend that this case offers no basis for applying an exception to the mootness doctrine. Such an exception exists in cases where a controversy is likely to recur, but may evade review. *See Hope Medical Group for Women v. Edwards,* 63 F.3d 418, 422 (5th Cir.1995), citing *Henschen v. City of Houston,* 959 F.2d 584 (5th Cir.1992). In the instant case, say defendants, this issue will not recur if the plaintiff will comply with Mississippi's simple statutory requirements or file a timely action.

■ The capable-of-repetition doctrine "applies only in exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998). If the plaintiff is the victim of an unfair and unconstitutional voting process under Mississippi law as he asserts, future candidates could find themselves victimized by the same process in the future. Therefore, even if this case were moot, the exception could be applied.

Therefore, this court rejects the argument of the defendants that this case is moot. This court now must determine as a matter of law whether the plaintiff has raised a claim for which relief may be granted.

### DISMISSAL PURSUANT TO RULE 12(b)(6)

Ruling on a Rule 12(b)(6) motion requires the court to accept the allegations of the complaint as true and view them in the light most favorable to the non-mover, drawing all reasonable inferences in that party's favor. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The motion should be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle him to relief. *Rochon v. City of Angola,* 122 F.3d 319, 320 (5th Cir.1997); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992).

Having carefully reviewed the plaintiff's complaint in the instant case, this court is disposed to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6), particularly in view of the state and federal authorities set forth below.

### EQUAL PROTECTION AND THE APPLICABLE STATE LAW

■ The defendants argue that the plaintiff's complaint does not establish a claim for violation of equal protection under the Fifth and Fourteenth Amendments of the Untied States Constitution. Under federal law, the Equal Protection Clause essentially directs that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Generally, to establish an equal protection claim the plaintiff must prove that similarly situated individuals were treated differently. *Wheeler v. Miller,* 168 F.3d 241, 252 (5th Cir.1999), citing *Muhammad v. Lynaugh,* 966 F.2d 901, 903 (5th Cir.1992). In the instant case the plaintiff fails to make this showing. Moreover, the plaintiff makes no showing that Mississippi's statutory scheme regarding

certification of candidates violates any fundamental right or selectively operates to the detriment of any suspect class of persons.

Mississippi Code Annotated Section 23–15–263(1) establishes county Executive Committees and provides in pertinent part that "the county executive committee at primary elections shall perform all duties that relate to the qualification of candidates for primary elections, print ballots for primary elections, appoint the primary election officers, resolve contests in regard to primary elections, and perform all other duties required by law . . . ."

Mississippi Code Annotated Section 23–15–1053 establishes the method for selecting county and state executive committees and provides that, "[s]ubject to federal law and national party rules, the state executive committee of each political party shall determine the method and procedures by which county executive committees and the state executive committee are selected. The state executive committee of the political party shall establish, at least ninety (90) days prior to the implementation thereof, procedures to be followed in the selection of county executive committees and the state executive committees. A copy of any rule or regulation adopted by the state executive committee shall be sent to the Secretary of State within seven (7) days after its adoption to become a public record."

It is undisputed in the instant case that the Mississippi Reform Party had formed a state executive committee, but had selected no county executive committee in Hinds County, Mississippi, or in any other counties, in time for the November 2, 1999, general election. In those districts encompassing precincts of more than one county, this was of no consequence because, as Mississippi Code Annotated Section 23–15–1051 provides, "[a]ll duties in regard to senatorial or other districts of more than one county shall be performed by the State Executive Committee; and candidates for any office from such district shall qualify with the State Executive Committee as the law provides." Thus, in those districts encompassing the precincts of more than one county, candidates of the Reform Party could be certified by the state executive committee which was in existence at the time in question. Certification of candidates by a county executive committee would not be required in these districts.

Furthermore, Mississippi Code Annotated Section 23–15–299(1) and (2) provide the different qualifying procedures for those districts encompassing more than one county, from those districts encompassing the precincts of only one county. Mississippi Code Annotated Section 23–15–299(1) provides that "[a]ssessments made pursuant to paragraphs (a), (b) and (c) of Section 23–15–297, and assessments made pursuant to paragraph (d) of Section 23–15–297 [9] for legislative offices for districts composed of more than one (1) county or parts of more than one (1) county, *shall be paid by each candidate to the secretary of the state executive committee with which the candidate is affiliated* by 5:00 p.m. on March 1 of the year in which the primary election for the office is held or on the date of the qualifying deadline provided by statute for the office, whichever is earlier." (emphasis added).

Mississippi Code Annotated Section 23–15–299(2) provides that "[a]ssessments made pursuant to paragraphs (d) and (e) of Section 23–15–297, *other than assessments made for legislative offices for districts containing more than one (1) county or parts of more than one (1) county,* shall be paid by each candidate to the circuit clerk of such candidate's county of residence by 5:00 p.m. on March 1 of the year in which the primary election for the office is held or on the date of the qualifying deadline

---

**9.** Mississippi Code Annotated Section 23–15–297(d) provides that "[c]andidates for *State Senator,* State Representative, sheriff, chancery clerk, circuit clerk, tax assessor, tax collector, county attorney, county superintendent of education and board of supervisors, not to exceed Fifteen Dollars ($15.00)."

provided by statute for the office, whichever is earlier. The circuit clerk shall forward the fee and all necessary information to the secretary of the proper county executive committee within two (2) business days (emphasis added)."

Thus, pursuant to Mississippi Code Annotated Section 23–15–299(1) and (2), candidates for State Senator in districts encompassing more than one county pay their fees to and are certified by the state executive committee; candidates for State Senator in districts encompassing only one, or a part of one, county, such as the plaintiff in the instant case, pay fees to the circuit clerk of the candidate's county of residence who then forwards the fee to the county executive committee. Then, the county executive committee certifies the candidate.

The Hinds County Circuit Clerk in the instant case had no county executive committee to which to refer the plaintiff's fee, so the Clerk sent the plaintiff's fee to the state executive committee. The state executive committee of the Reform Party subsequently cashed the check and, presumably, certified the plaintiff. This process, however, was not in accordance with state law. Afterwards, the Hinds County Election Commission sought the aforesaid Mississippi Attorney General's Opinion on the matter to clarify what should be done in such an instance.

Now, let's turn to the certification process itself. Pursuant to Mississippi Code Annotated Section 23–15–299(7),

> [u]pon receipt of the proper fee and all necessary information, the proper executive committee shall then determine whether or not each candidate is a qualified elector, and whether any candidate

has been convicted of any crime listed in Section 241 [10], Mississippi Constitution of 1890, or is a fugitive from justice for this state or any other state, and such charge upon which a candidate has fled has not been dismissed. If the proper executive committee finds that a candidate is not a qualified elector, or that such candidate has been convicted of any crime listed in Section 241, Mississippi Constitution of 1890, and not pardoned nor has served his or her sentence, or is a fugitive from justice as aforesaid, then the name of such candidate shall not be placed upon the ballot. Where there is but one (1) candidate, the proper executive committee when the time has expired within which the names of candidates shall be furnished shall declare such candidate the nominee.

All of the foregoing Mississippi statutes, §§ 23–15–263(1); 23–15–1053; 23–15–299(1); 23–15–299(2); and 23–15–299(7), govern the circumstances of the plaintiff's candidacy in the instant case. The plaintiff does not dispute this, and agrees that he had not fully complied with these statutes, particularly Mississippi Code Annotated Section 23–15–299(2), at the time in question. Instead, the plaintiff reaches for the possibility of an equal protection claim, complaining that Republican candidates in Issaquena and Yalobusha Counties had no county executive committees to certify their candidates, yet they remained on the ballots of their respective counties. The defendants, however, point out that both Issaquena and Yalobusha Counties have no senatorial districts encompassing just one or only part of one county. Thus, the senatorial candidates in those counties

10. Section 241 provides that "[e]very inhabitant of this state, except idiots and insane persons, who is a citizen of the United States of America, eighteen (18) years old and upward, who has been a resident of this state for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector, except that he shall be qualified to vote for President and Vice President of the United States if he meets the requirements established by Congress therefor and is otherwise a qualified elector."

would have had to comply with Mississippi Code Annotated Section 23–15–299(1) rather than (2), and the plaintiff does not allege that they failed to do so.

Therefore, based on the foregoing review of Mississippi's law on this issue, this court finds no basis for an assertion that the plaintiff was denied equal protection under that law.

### THE VOTING RIGHTS CLAIM

■ The plaintiff's complaint suggests that his voting rights have been violated. Section 2 of the 1965 Voting Rights Act prohibits any voting practice or procedure that "results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color." *See* Title 42 U.S.C. § 1973(a); and *Clark v. Calhoun County, Miss.,* 88 F.3d 1393, 1398 (5th Cir.1996). As the Fifth Circuit noted in the holding in *Clark, Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 2766–67, 92 L.Ed.2d 25 (1986), there are three preconditions to establishing a Section 2 violation: the plaintiff must demonstrate: (1) that the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) that the minority group is politically cohesive; and (3) that the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. *Id.,* 106 S.Ct. at 2766–67; *Concerned Citizens for Equality v. McDonald,* 63 F.3d 413, 416 (5th Cir. 1995). These preconditions apply to challenges to both single-member and multi-member districting schemes. *Growe v. Emison,* 507 U.S. 25, 39–41, 113 S.Ct. 1075, 1084, 122 L.Ed.2d 388 (1993) (applying *Gingles* to single-member districts).

■ Moreover, in order to prove vote dilution, a plaintiff must show the three aforesaid preconditions, and also prove that, "under the 'totality of circumstances,' [the minority group] does not possess the same opportunities to participate in the political process and elect representatives of their choice enjoyed by other voters." *League of United Latin American Citizens v. Clements,* 999 F.2d 831, 849 (5th Cir.1993) (en banc), *cert. denied,* 510 U.S. 1071, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994). The existence of racially polarized voting and the extent to which minorities are elected to public office are still the two most important factors to be considered in the totality-of-circumstances inquiry. *See Clark,* 88 F.3d at 1397, citing *Gingles,* 106 S.Ct. at 2765–66 n. 15; and *Westwego Citizens for Better Government v. City of Westwego,* 946 F.2d 1109, 1122 (5th Cir. 1991) (Westwego III ).

■ In view of the foregoing authority, this court finds that the plaintiff's complaint falls far short of asserting a claim under Section 2 of the 1965 Voting Rights Act. The plaintiff's opportunity to participate in the political process in question was impeded by nothing more than his failure to follow the statutory requirements which everyone, regardless of their race, must follow. Moreover, the plaintiff cannot be heard to argue that he belongs to a minority group which was excluded from the election process.

### CONCLUSION

Based on the foregoing, the plaintiff's complaint is hereby dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted. Consequently, the motions of the defendants to dismiss the plaintiff's complaint [**items # 4 & 5**] are hereby granted. Additionally, inasmuch as the court has dismissed the plaintiff's complaint, the plaintiff's motion to continue [**item # 6**] is now moot and shall be terminated.